ROBERT HABERSHAM, ADM'OR D. BLAKE, COMPL'T. VS. FARISH CARTER, ET. AL. DEF'TS.

*In Equity.*

The Act of December 16th, 1811, in reference to injunctions, applies to *all persons*, in whatever capacity they apply for the writ. An Executor or Administrator cannot obtain the injunction, without giving bond and paying costs as required by such statute.

**By ROBERT M. CHARLTON, Judge.**

AN application for injunction was made to me, at the last term of this Court, by the complainant in the above cause, and although I suggested to his counsel at the time, the doubt which I had, whether it ought to be granted, without costs being paid and security given for eventual condemnation money, in terms of our statute, yet, as the danger was pressing, and a great difference of opinion existed at the bar, as to the true construction of that statute, I thought proper to let the writ issue until further order, leaving it to the defendants' counsel to argue the point, on a motion to dissolve the injunction. That motion was made at the close of the last term, by Mr. *Millen,* counsel for *Benjamin F. Petton,* one of the defendants, and without touching the equity of the bill, he insisted, that under our statute and rule of Court, "no injunction shall be sanctioned or granted by any Judge of the Superior Courts of this State, until the party requiring the same, shall have previously given to the party against whom such injunction is to operate, by application to the Clerk of the Superior Court for the purpose, a bond, with good and ample security for the eventual condemnation money, together with all future costs; which said bond shall be lodged in said Clerk's office, subject to the order of the Court; and have paid all costs which may have accrued in the case, the subject of the injunction." Neither of these requisites having been complied with, he contended that the injunction could not be sustained. Mr.

*Berrien,* of counsel for complainant, denied that an *administrator* was within the spirit of the statute referred to. (*Prince's* Dig. 223–4.) He affirmed, that great injustice and hardship would result from a strict adherence to the letter of the law, and illustrated his argument by a reference to the facts of this case, and the situation of the complainant as the representative of an insolvent estate, to shew, that he was entirely remediless without the intervention of the strong arm of this Court, and he urged, that to require the administrator of an insolvent estate, to give bond to a creditor thereof, for "the eventual condemnation money," and costs, would be to deny the writ of injunction, since no one, with a proper regard to his own interests, would enter into such a stipulation.

Arguments of *inconvenience* are only entitled to weight with a Court, in new or doubtful cases. If the letter of the law is clear, and there is nothing to shew, that such letter is at variance with the reason and spirit, a Judge is bound to adhere to the letter. With the hardship, the inconvenience, the unreasonableness of the law, he has nothing to do. Where there is no ambiguity in the law, "*ibi nulla expositio contra verba expressa fienda est:*"— " When I find the words of a statute perfectly clear, I shall adhere to the words." Per *Denman,* Ch. J. in 4 *Neville & Manning* 426. "The English Judges have frequently observed," says Chancellor *Kent,* (1 Vol. Com. 467, note (*d.*) 3d edit.) "in answer to the remark, that the Legislature meant so and so—that they in that case have not so expressed themselves, and therefore the maxim applied, *quod voluit non dixit.*" (See also *Rex* vs. *Stoke Damerel,* 7 *Barn. & Cress.* 569. *Rex* vs. *Ramsgate,* 6 B. & C. 712. *The King* vs. *Skone,* 6 East. 518.) "Our decision," said Lord *Tenterden,* in *Rex* vs. *Barham,* (8 B. & C. 104,) "may, perhaps, in this particular case, operate to defeat the object of the statute; but it is better to abide by this consequence, than to put upon it a construction not warranted by the words of the Act, in

[Habersham, adm'or. Blake, vs. Carter, et, al.]

order to give effect to what we may suppose to be the intention of the Legislature." (And see *Notley* vs. *Buck*, 8 B. & C. 164.) "It is much safer to adopt what they have actually said, than to suppose what they meant to say." (*Ashurst*, J. in *Jones* vs. *Smart*, 1 Term Rep. 51.)

There can be no doubt that the letter of this law includes all persons, whether seeking to protect their own rights, or those of others, to whom they stand in a fiduciary character. The statute declares that " *no* injunction shall be granted," without security being first given for eventual condemnation money and payment of costs, and the 7th equity rule of Court requires, that the Clerk's certificate of payment of costs and security being given, as required by law, shall be annexed, when a bill praying an injunction is presented to the Judge, for his sanction. Whatever doubt may exist as to the intention of the Legislature, in reference to injunctions, where there could be no eventual condemnation money, I see none when the object of the injunction prayed for, is to restrain a plaintiff from proceeding at law. They have said, in such case, emphatically, and without making any exception, that "no injunction shall be granted or sanctioned," until bond has been given for such eventual condemnation money, and costs have been paid. The mischief which the Legislature sought to avoid, was the facility with which men might be delayed from prosecuting their legal rights, by the intervention of a Court of Equity; the remedy provided was, to require that injunction should not issue, a party should not be hindered, unless he were secured in the eventual condemnation money, if he should prove ultimately, to be in the right. The counsel for the defendants, in this case, has argued, that an executor, administrator, &c. may commit as much injury as if he was acting in his own right, and that he is, therefore, as much within the mischief and the remedy as any other person; and there is force in the argument. And in the case of *Pelot*, *et. al.*, pl'ffs. in ex'on. vs. *Maxwell*, *et. al.*, trustees and ex'ors. cl'ts., decided by Judge

[Habersham, adm'or Blake, vs. Carter, et. al.]

*Andrews*, at Chatham Superior Court, January term, 1837, where a motion for a new trial was made, on the ground that damages had been awarded under our statute, for a frivolous appeal, against the claimants, who acted in a representative capacity, the Court refused to sustain the motion, alleging that such a claimant might endamage the plaintiff as much as any other person, and that if the statute of the State had meant to except executors, &c. it would have said so. "He that would except himself from the operation of a law, must shew the law that excepts him," was the language of the Judge.

That this adherence to the plain and positive terms of the statute, may occasionally work hardship and injustice, is no argument with me. No human law can be framed, that will not sometimes have that effect. The great object of a law-giver, is to provide a rule, that will do most good and least harm. And I think that I have given sufficient authority to show, that a Judge is bound to enforce a law when it is clear, without reference to the inconveniencies that may result from it. And it is alike useless to contend, that an *injunction will never be granted* to an administrator, unless a sufficient cause be shewn, and therefore, that a Judge will take care that it is not made an instrument of oppression, nor suffer a party to be restrained, unless he ought so to be. The same argument will apply to an individual asking for this writ in his own right, and yet the law has declared in substance, that however strong may be the case presented, though injustice will inevitably result from its refusal, though the most gross and palpable fraud has been, (and will continue to be,) committed, the writ shall not issue, until security has been given for the eventual condemnation money, and costs have been paid. I will mention two cases occurring under this law, quite as hard as the present. *Ware* died indebted to some orphans, and they filed their bill in Richmond Superior Court, alleging that the deceased had been their guardian, and had

died indebted to them *as such;* that their claim, according to the law of Georgia, was of superior dignity to any other—that the other creditors of deceased, were proceeding with their cases to judgment, and prayed an injunction to restrain them, but they offered no security, and insisted that the statute did not embrace their case ; but Judge *William Schley,* (the present Governor of Georgia,) after "full consideration, refused the injunction, unless security should be given, believing that the law was imperative, and left no ground for doubt." So in the case of *Read,* et. al. vs. *Dews,* Sheriff, et. al. in Chatham Superior Court,* where the complainants claimed to be preferred to the individual creditors of intestate, because they had a lien on the specific property, and also a preference over all other creditors, by virtue of the Act of Georgia of 1799, entitled an Act for the better security and protection of orphans, and their estates, although Judge *Law* doubted, whether the statute requiring security before injunction could be granted, embraced cases where there was no condemnation money, yet required the security in the case before him. The argument of inconvenience and hardship, if proper to be addressed to a Judge in answer to the positive provisions of a statute, might have been listened to with as much patience in either of the cases just cited, as in the cause now before me, and yet such arguments were urged in vain.

When this motion was made to me, at the close of the last term, I thought that it was one of those matters, which would authorise me in soliciting the advice of all the Judges of the Superior Courts of the State of Georgia. It seemed to me, that the true construction of an Act passed in 1811, and in a matter of daily occurrence and of great importance, ought not still to be *vexata questio,* and that the present occasion offered an opportunity of settling it throughout the State. Without having much doubt on it myself,

---

* *Supra,* p. 356.—(*Ed.*)

[Habersham, adm'or Blake, vs. Carter, et. al.]

I was determined to adhere to the opinion of a majority of the
Judges of the State, in order that a certain rule might be establish-
ed, where hitherto so much uncertainty had prevailed.    In the
answers which I have received to my communications, several cases
have been mentioned in which the point has been determined.
Judge *Cobb*, whilst Judge of the Oakmulgee Circuit, decided in
the case of *Beaty's Ex'ors* vs. *Beaty's Creditors*, on solemn ar-
gument, that the *Executor* had the right to file an injunction with-
out bond and security.    Judge *Crawford* (*Wm. H.*) made similar
decisions in the Northern circuit in *Cheves' Ex'or* vs. his creditors,
in Taliaferro county, and *Heard's Ex'ors* vs. his creditors, in El-
bert county; and it is mentioned upon the authority of the Hon.
*Charles J. McDonald*, formerly Judge of the Flint circuit, that
the point was similarly settled there, "by analogy to the statute
allowing appeals to Executors, &c. without security."    Judge
*Polhill*, the present Judge of the Oakmulgee circuit, who furnishes
me with these cases, says, that he should feel himself bound by
these adjudications, and would grant the injunction for the protec-
tion of representatives and estates, without *bond*.    Judge *Harris*
of the Western circuit, is of opinion, that a fair construction of the
statute, would allow an injunction to issue, without the formality of
the bond as mentioned in the statute, " in cases of *administrators*,
guardians, or where the party applying for the injunction, has en-
tered an appeal previously, and given the necessary security."
He says, that where security has been given faithfully to apply the
funds as in case of administrator's bonds, the object of the statute
is answered, but that the writ ought not to issue at the instance of
an *executor* or trustee, where no security had been given faith-
fully to execute the trust.    Judge *Andrews* of the Northern cir-
cuit, adverts to the same distinction between executors and admin-
istrators, and though he does not give a decided opinion, yet says,
that he feels " well satisfied, that neither an *executor* nor *adminis-
trator* should give a bond for the whole debt of their decedent,
when for the want of assets, they may be condemned to pay a *part*

only; neither the spirit nor literal construction of the statute requires it." I am neither desirous, nor willing to array myself against the authority of these cases or opinions, but I may be permitted to remark, that the distinction between executors and administrators has not been observed in practice, since all the cases adduced, in which injunction has issued without bond in favor of a representative of an estate, are instances in which it has so issued at the prayer of an *executor*, and although it is true, that the bond given by an administrator affords some security to the creditor of an estate, yet, the argument which is deduced from this fact, while it professes to be founded, on the supposed *intention* of the law giver, yet leaves unprotected a multitude of cases of equal hardship and inconvenience, where the spirit of the law, as contended for, ought equally to be observed. I can scarcely believe, that when the Legislature declared, that no injunction should issue without bond to the party for the eventual condemnation money, they meant, that an administrator's bond payable to the Register of Probates for the county, with a very different condition, should be considered as a compliance with the law ; and if they did not so mean, and we are now making the exception to suit the hardship of the case, we are legislating *judicially*, and substituting the " crooked cord of discretion for the golden metwand of the law." And in reference to the case decided in the Flint circuit " upon the analogy to the statute allowing appeals to executors, &c. without security," I remark, that this doctrine of analogy ought not to be carried too far; that the statutes are not in *pari materia*, and are not therefore to be taken together. The statute in relation to appeals was passed in 1799, in reference to a proceeding at common law, and after directing, that all persons so appealing should pay all costs and give security for eventual condemnation money, adds, " except executors and administrators, who shall not be liable to give such security." The law under discussion was enacted in 1811, in reference to the equity proceeding of injunction, and does not except administrators and executors, &c. Even in the case

of statutes in *pari materia*, when the Legislature are found some-times inserting, and sometimes omitting a clause, it is to be pre-sumed, that their attention has been drawn to the point, and that the omission is designed. (*Moser* vs. *Newman*, 6 *Bingham* 561.)

I have stated the cases and opinions adverse to the construction my own mind would give to the statute. I proceed to motion those in support of my views. Judge *Shly*, of the Middle cir-cuit, says, "My opinion upon the law is this ; that *in all cases* where an injunction is prayed, and the object is to stay a proceed-ing at law, the party must give the security in terms of the statute, but when an injunction is prayed to stay waste, &c. the Court will be governed as is usual in such cases in equity. The Legislature in passing the Act, having failed to exempt executors and adminis-trators, will it not be judicial legislation for the Court to make the exception, the words of the statute being plain and imperative on the Judge." Judge *Warner*, of the Coweta circuit, says, " at the *Convention of Judges in May*, 1833, the question was submitted by Mr. *Cone*, of Greene county, and argued at some length, in fa-vour of granting an injunction at the instance of an *administrator*, without security, inasmuch as he had already given security. My impression was at that time, in favor of granting the injunction, but the other Judges advised the Judge of the Oakmulgee circuit to refuse his sanction, without security, being of opinion, that the statute of 16th December, 1811, was imperative, in which opinion, from a careful examination of that statute, I now would yield my assent." Judge *Iverson*, of the Chattahoochee circuit, writes, " my opinion of the subject is this, that as the law requiring bond and security is *general*, in cases of injunction, and the law except-ing administrators, executors, &c. from giving security in cases of appeal, is an exception to a general rule, it cannot be applied to any other case, than such as is embraced specifically in the statute ma-king the exception. I am of opinion, that the usual bond and se-curity ought to be required." I am sure that I shall be pardoned

by my much respected brothers for having given their opinions to
the public, and for the commentaries which I have made upon them.
I repeat, that I should have decided this point in accordance with
the opinion of a majority of the Judges of the State. I should
have been content to have announced, that the question was settled
by a majority of the highest branch of the Judiciary department,
without offering to disturb it, by adding my own feeble opinion,
adverse to such decision. But the scales being even, I was com-
pelled to throw my own weak judgment in the balance, and in do-
ing so, I felt bound in justice to myself, and through respect to
those from whom I differ, to state the reasons which operated in
my mind, and compelled me to dissent from them. I could not
discharge this duty properly, without commenting upon their rea-
sons, and I felt more strongly the necessity of doing this, from the
knowledge of the weight of authority which their names and opin-
ions would carry with them. I have used these opinions for ano-
ther object; to shew the different reasons urged for that construc-
tion of the statute, which would allow the injunction to issue with-
out bond, and the various exceptions taken—to give a practical
illustration of the difficulties of reasoning away the plain letter of
a positive statute, and the danger and uncertainty of such a course;
and lastly, that I might advert to the expression used by Lord *El-
lenborough*, C. J., (in *Rex* vs. *Inhabitants of Leek Wootton*, 16
East. 122,) that "when there are conflicting decisions upon the
construction of a statute, the Court must refer to that which is and
ought to be the source of such decision, that is, the words of the
statute itself."

It is worthy of remark, that the opinion expressed by the con-
vention of Judges in 1833, upon this identical point, was made up
with the knowledge of the decisions of Judges Cobb, Crawford,
and in the Flint Circuit—that it is the last judicial construction
given to this statute—that it was pronounced after the point had
been argued before the Judges, and that it may be considered as

having been *unanimously* expressed, the only dissenting Judge *then*, having *since*, upon a careful examination of the statute, " yielded his assent." Upon the authority of that opinion, and the advice given to me by Judges *Shly*, *Warner* and *Iverson*, (in whose views of the question, I fully concur,) and in obedience to the plain and unambiguous letter of the statute, not variant, so far as I can ascertain it, from its spirit and reason, I must dissolve this injunction, and it is accordingly dissolved.

N. B.—After this injunction was dissolved, I received the reply of the Hon. *Angus M. D. King*, the present Judge of the Flint circuit, an extract from which I subjoin. He says, " the only case where this question has been decided within my hearing or knowledge, was in the case of *Pridley* vs. the *Ex'ors of Blackshear*, a case that some years ago, excited a good deal of interest in the Superior Court of Twiggs county : there a *demurrer was sustained* to an injunction obtained by the executors, *because the security was not given as in other cases.*" He adds, that, he gives this case from hearsay, and that he has heard it objected to more than *once*. " This brings me," (he proceeds to observe,) " to what I have myself looked upon as the line of distinction to be observed, in granting injunctions *with* or *without* security, which is, that if the case against which the injunction is sought, goes to charge the estate merely for any cause, arising *in the life time of the testator* or *intestate*, then, I think, that there can be no question but that they are entitled to all the benefits of a full defence or prosecution, without incurring any increase of *personal* liability ; but on the other hand, where the proceeding assumes the shape of an action against the executor or administrator in his *individual* or *personal*, rather than in his representative character, I think the security ought to be required, although in the bill or declaration they may be named and set forth as the representatives of an estate, or of a *person* or persons deceased."

I have also received the answer of the Hon. *A. A. Morgan,*

Judge of the Southern circuit. He writes, that "some time in 1824, Judge *Harris*, the presiding Judge of this circuit, in the case of the *Ex'or* of *Jonathan B. Bacon* vs. *Thomas F. Bacon*, decided, that executors, administrators, &c. were *not* exempt from the operation and requirements of the statute, and construed the Act *strictly*. At the subsequent session of the Legislature, an attempt was made to alter the law in this regard, but the bill having such alteration in contemplation was *lost*. I am of opinion, and should so decide, if the case were to come before me, that the *requisitions of this statute must be complied with*, and I should be unwilling to exempt executors, administrators and guardians as not being included within the spirit of the law."

The fact, that the Legislature with their notice specially called to the inconvenience, &c. had refused to exempt executors, administrators, &c. from the operation of the statute, would have had great influence on my mind in determining this question. I am happy to find in the letter of Judge *Morgan* a corroboration of my views.

I have added these opinions, for the benefit of the profession.

BERRIEN & LAW, for complainants—JOHN MILLEN, contra.